**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANTHONY ADAMITIS | |
| Plaintiff, | NO. 3:16-CV-00497 |
| v. | (JUDGE CAPUTO) |
| BOROUGH OF DICKSON CITY, *et al.*, | |
| Defendants. | |

## **MEMORANDUM**

Presently before me is a motion to dismiss (Doc. 11) Plaintiff Anthony Adamitis' Amended Complaint (Doc. 10) filed by Defendants Borough of Dickson City, Rick Cesar, Michael Fedorka, Robert Hall, Jack Horvath, Jeffrey Kovaleski, Rose Louryk, and Barbara Mecca (collectively "Defendants").

Plaintiff alleges violations of his First Amendment rights when Defendants retaliated against him for supporting, campaigning, and associating with Georgia Adamitis and Paul Kwiec in their campaign for Borough of Dickson City Council in 2015. (Doc. 10, at ¶ 26).

For the reasons that follow, Defendants' motion to dismiss the Amended Complaint will be granted.

## **I. Factual Background**

The facts, as set forth in Plaintiff's Amended Complaint (Doc. 10), are as follows:

Plaintiff Anthony Adamitis is an elected Tax Collector for the Borough of Dickson City. Plaintiff was an active supporter of his wife, Georgia Adamitis, and Paul Kwiec in their campaign for Borough Council.

Defendants are five current and two former members of the Council who were politically against Georgia Adamitis and Paul Kwiec, instead supporting Defendants Michael Fedorka, John Horvath, Jeffrey Kovaleski, and Rose Louryk. Defendants were aware of Plaintiff's support for and association with Georgia Adamitis and Paul Kwiec in their campaign for Borough Council.

On May 19, 2015, Georgia Adamitis and Paul Kwiec won the primary election. The

following day, Defendants took away Plaintiff's access card to the Borough's administrative offices; Plaintiff, however, continues to have access to the building, where he retrieves his mail and faxes, if another employee is present in the administrative offices. Plaintiff was also told to move all tax records out of a storage area where they had been kept for more than twenty years.

Sometime in May 2015, Defendants Fedorka, Horvath, Kovaleski, and Louryk publicly disparaged Plaintiff. They disclosed personal, private, and incorrect information about Plaintiff to the public.[1]

Nearly five months later, on October 19, 2015, Defendant Fedorka, pursuant to Pennsylvania Right-to-Know disclosure laws, requested from Plaintiff "all receipts, cancelled checks or other forms of payment made to the Dickson City Tax Collector or his office for fees charged for duplicates or replacement bills from the year 2011 to October 17, 2015." (*Id.* at ¶ 29). According to Plaintiff, this request was unfounded because Plaintiff, as an elected Tax Collector, is not subject to the Right-to-Know disclosure laws.

A month later, in November 2015, both Georgia Adamitis and Paul Kwiec won the general election. In mid-December, Plaintiff's computer was allegedly "tampered with on at least two occasions and his paperwork was reviewed even though his office was locked." (*Id.* at ¶ 31). That same month, Defendant Hall, pursuant to Right-to-Know laws, sought "a copy of any and all documents, correspondence sent or received concerning payment, fees or other instruction on requesting a tax duplicate for the year 2015, 2014, 2013, and 2012." (*Id.* at ¶ 32).

Shortly thereafter, on or about December 28, 2015, the Council passed a motion to seek "submissions to the Pennsylvania Right To Know Office to AP 2015-2806 and to take appropriate action to secure the requested material." (*Id.* at ¶ 33). Two days later,

---

[1] The Amended Complaint fails to specify the exact date, the content of the speech, and the surrounding circumstances.

2

Defendant Hall, pursuant to Right-to-Know laws, again requested from Plaintiff a "copy of the Dickson City Tax Collector yearly report of total gross compensation for the years 2011, 2012, 2013, and 2014." (*Id.* at ¶ 35).

Three months later, on March 8, 2016, the Council passed an ordinance requiring the elected Tax Collector "to assess and collect $11 for each tax certificate/assessed property and forward the same to the Borough to be deposited in the general fund." (*Id.* at ¶ 38). The Borough "will then issue a check to the Tax Collector subject to withholdings." (*Id.*). According to Plaintiff, the ordinance requires him "to perform his elected position in a more expensive way to taxpayers and others seeking information on tax certification duplicates." (*Id.* at ¶ 37).

Finally, Plaintiff claims that the Borough ordinance passed on March 8, 2016 is invalid because, according to the Pennsylvania Tax Collector's Manual, any change in compensation of the Tax Collector must be adopted prior to the 15th day of February. (*Id.* at ¶ 40).

In light of the above, Plaintiff instituted the instant lawsuit (Docs. 1, 10), asserting that Defendants' actions constituted a "campaign of harassment" in retaliation for Plaintiff's political support for Georgia Adamitis and Paul Kwiec. (*Id.* at ¶ 41).

Defendants have moved to dismiss all claims. (Docs. 11, 13). The motion has been fully briefed and is now ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of

3

establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)

(quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

**A.    Qualified Immunity**

In Counts I and II, Plaintiff asserts a claim of retaliation in violation of the First Amendment against seven individuals: Rick Cesar, Michael Fedorka, Robert Hall, Jack Horvath, Jeffrey Kovaleski, Rose Louryk, and Barbara Mecca. (Doc. 10, ¶¶ 3-9). In their motion to dismiss, (Doc. 13, at 6), Defendants claim that they are entitled to qualified immunity and, as such, both counts should be dismissed. I agree.

Qualified immunity insulates government officials performing discretionary functions from suit insofar as "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107

S.Ct. 3034 (1987)). To determine whether an official has lost his or her qualified immunity, courts must first "decide 'whether a constitutional right would have been violated on the facts alleged[.]'" *Doe*, 361 F.3d at 237 (quoting *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151 (2001)) (omission in original). If the answer to that question is "yes," courts must "consider whether the right was 'clearly established.' " *Id.* at 238 (quoting *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151).

It is well-established that "an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights." *Anderson v. Davila*, 125 F.3d 148, 160 (3d Cir.1997) (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568 (1977)). To properly plead a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983,[2] a plaintiff must allege "(1) that [the plaintiff] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *see also Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

Dispositive in the instant case is the second prong, namely, the determination whether Plaintiff has adequately alleged that Defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his or her rights." *Lauren W.*, 480 F.3d at 267. In making this determination, courts "focus[] on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2000) (quoting *Suarez Corp.*

---

[2] 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]"

6

*Indus. V. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)); *see also Koren v. Noonan*, 586 Fed.Appx. 885, 888 (3d Cir.2014). "To properly balance these interests, courts have required that the nature of the retaliatory acts committed by a public employer be more than *de minimis* or trivial." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (citation omitted); *see also McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006).

Here, the actions alleged in the Amended Complaint encompass: (1) removing Plaintiff's key card building access privileges, (Doc. 10, at ¶ 24); (2) ordering Plaintiff to remove his tax records from the Borough's storage area, (*Id.* at ¶ 25); (3) making several Right-to-Know disclosure requests upon Plaintiff, (*Id.* at ¶ 28); (4) disclosing "personal, private, incorrect information on Plaintiff to the public," (*Id.* at ¶ 22); and (5) passing an ordinance which modified the compensation scheme for a Tax Collector. (*Id.* at ¶ 38).[3]

I find that the above-cited alleged wrongs, even if true, do not rise to the level of actionable conduct. Specifically, I find that the taking away of the access card and the request to remove records from a storage area are merely *de minimis* inconveniences. After all, Plaintiff's access to the building was never taken away; he is still free to access it without the convenience of a key card. Further, the alleged Right-to-Know requests are similarly *de minimis* because, assuming that a Tax Collector is not subject to Right-to-Know disclosure laws, as Plaintiff suggests, he could have simply refused them.[4] In fact, in his brief, Plaintiff conveniently omits whether he complied with the requests or how those requests impacted either his work duties or his ability to exercise his protected rights. More importantly, I

---

[3]Plaintiff also claims that his work computer was tampered with on two occasions. (Doc. 10, at ¶ 31). There is no way of knowing if any of the named Defendants were responsible for the alleged tampering. I find that this allegation does not rise above a mere speculation as to the named Defendants.

[4]I express no opinion as to whether the Right-to-Know requests had any foundation in law because even if they did not, I am unable to find any actionable injury.

cannot find that a mere request for information by the Council members rises to the level of retaliation.[5]

In reaching this conclusion, I consider the status of Plaintiff as an independently elected high-level official who cannot be terminated, demoted, disciplined, or subjected to any other adverse employment action by the Borough, and, in any case, was not subjected to any such action. *Cf. Manna v. Twp. of Fairfield*, 2007 WL 3231894, at *2 (D.N.J. Oct. 30, 2007) (holding that altering a plaintiff's terms of employment would be sufficient to establish a claim). Thus, I find that the actions detailed in the Amended Complaint would not "deter a person of ordinary firmness from exercising his constitutional rights." *Lauren W.*, 480 F.3d 259, 267 (3d Cir. 2007).

As to the alleged disclosure of Plaintiff's personal information by Defendants, I first note that this allegation is insufficient because, aside from labeling the disclosed information as "personal, private, [and] incorrect," the Amended Complaint fails to identify what the disclosed information was, and fails to specify the date, circumstances, and context of the alleged disclosure. There is nothing to support Plaintiff's conclusions that the information was indeed "personal," or "private" or "incorrect," or even that it was made "publically."

More importantly, as the Third Circuit has noted, "courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (citing *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). The

---

[5]Moreover, it appears that only two of the seven named defendants made the direct Right-to-Know requests. (*See* Doc. 10, at ¶ 32, 35). Thus, with regards to this particular allegation, the complaint fails to state a claim as against Cesar, Horvath, Kovaleski, Louryk, and Mecca. If Plaintiff chooses to file an amended complaint, I order Plaintiff to dispense with the kitchen-sink approach to pleading and categorize each count not only as it relates to particular conduct and injury, but also as it relates to particular defendants.

8

disclosures in the instant case, even if truly "private," "incorrect," and "public," likely fall into this category. There is no evidence, not even an allegation, that Defendants' allegedly retaliatory speech involved "threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action [would] imminently follow," *Koren*, 586 Fed.Appx. 885 (quoting *Suarez*, 202 F.3d at 687). As such, I conclude that, even when examining the record in the light most favorable to Plaintiff, it "would not dissuade a person of ordinary firmness from" engaging in the type of protected activity undertaken by Plaintiff. *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (finding that the defendant's "conduct simply do not rise to the level of a retaliatory harassment claim under the First Amendment," when "he suffered no alteration in his employment benefits, pay, or job classification as a result of speaking out"); *see also Suarez,* 202 F.3d at 685 (stating that "not every reaction made in response to an individual's exercise of his First Amendment right to free speech is actionable retaliation"); *Bart*, 677 F.2d at 625 (holding that a plaintiff had alleged an actionable First Amendment claim when she claimed that "an entire campaign of harassment[,] which though trivial in detail may have been substantial in gross," had been mounted against her, but cautioning that "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise"). *See also Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir.1998); *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir.1997); *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 417 (4th Cir. 2006).

Finally, Plaintiff claims that a new Borough ordinance improperly changed the method of administering a Tax Collector's salary. However, because his compensation was the same before and after the ordinance, the alleged wrong is, again, trivial. Plaintiff claims only that, instead of receiving the collected fees directly, he now receives them from the Borough, which I cannot even characterize as an inconvenience. *Cf. Brennan v. Norton*, 350

9

F.3d 399, 419 (3d Cir. 2003) (finding that briefly taking an employee off the payroll and a suspension were more than *de minimis* to support a cause of action for illegal retaliation).[6]

Plaintiff points to a Third Circuit case which noted that the threshold for finding an action to be retaliatory is "very low." *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006). But even under such circumstances, the court wrote, "a plaintiff must plead more than mere 'criticism, false accusations, or verbal reprimands.'" *Koren*, 586 Fed.Appx. at 888. (quoting *Brennan*, 350 F.3d at 419). In fact, all cases referenced by Plaintiff for the proposition that the threshold showing is trivially low do not, in fact, support that assertion. *See Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (finding a violation when "acts amounted to a *severe* and *sustained* campaign of employer retaliation that was reasonably likely to deter plaintiffs from engaging in speech protected") (emphasis added); *Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000) (focusing the inquiry on whether "the circumstances are such as to make [an action] an *effective deterrent* to the exercise of a fragile liberty") (emphasis added); *see also Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 766 (1st Cir. 2010) (demotion and transfer); *Manna v. Twp. of Fairfield*, 2007 WL 3231894, at *2 (D.N.J. Oct. 30, 2007) ("altering a plaintiff's terms of employment"); *Martsolf v. Brown*, 2009 WL 5111767, at *6 (M.D. Pa. Dec. 15, 2009), *aff'd*, 457 Fed.Appx. 167 (3d Cir. 2012) (removal of supervisory responsibilities); *Migliore v. Ackerman*, 2013 WL 4079650, at *7 (E.D. Pa. Aug. 12, 2013) (demotion) *amended on other grounds sub nom.*, *Migliore v. Archie*, 2014 WL 7177368 (E.D. Pa. Dec. 16, 2014); *Rodriguez-Garcia*, 610 F.3d at 766-67 (1st Cir. 2010) (significant reduction in responsibilities); *see also Burlington N. &*

---

[6] To the extent that Plaintiff is bringing a claim on behalf of taxpayers that the new method of pay administration imposes greater financial burdens on taxpayers, but not him as a an elected official, I find that he lacks standing to pursue this claim as currently articulated. *See Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 1370 (1991) ("[I]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.").

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70-71 (2006) (in context of Title VII retaliation, reassignment to position that was more arduous and less prestigious constituted retaliation).

Here, I do find that Defendant's acts amounted to a severe and sustained campaign that constituted an effective deterrent to the exercise of Plaintiff's rights. Even when looking at the record in the light most favorable to Plaintiff, the cumulative effect of the alleged acts by Defendants would not dissuade a person of ordinary firmness from engaging in First Amendment activities. For instance, the arguably legitimate Right-to-Know requests occurred more than *five months* after Plaintiff was allegedly ordered to remove files from a storage area and his key card was taken away, and the passage of the allegedly invalid ordinance occurred the following year, three months later. That hardly amounts to a "campaign of harassment," as Plaintiff argues. (Doc. 10, at ¶ 41). Thus, I find that the acts, as alleged, are *de minimis* and do not give rise to a cognizable retaliation claim under § 1983. As such, the individually named Defendants are entitled to qualified immunity.

## B. Municipal Liability

Defendant Borough of Dickson City also moves for dismissal on the grounds that the Amended Complaint fails to allege any facts establishing municipal liability pursuant to 42 U.S.C. § 1983. (Doc. 13, at 8-9).

A municipality may only be held liable under § 1983 when the "execution of a government's policy or custom ... inflicts the injury." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). While a government policy is established by a "decision maker possessing final authority," a custom arises from a "course of conduct ... so permanent and well settled as to virtually constitute law." *Id.* (citing *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018 (1978)). Accordingly, a plaintiff seeking to recover from a municipality must: (1) identify an allegedly unconstitutional policy or custom; (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between

the municipal action and the alleged deprivation of federal rights. *Board of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997).

Here, Plaintiff fails to allege any policy, practice, or custom of the Borough which directed or caused the deprivation of any federally protected right. As such, Defendant Borough of Dickson City will be dismissed from the action.

**C.     State Law Claim**

In Count III of the Amended Complaint, Plaintiff seeks to challenge a local compensation ordinance on state tax law grounds. (Doc. 10, ¶ 51-54). Because all federal claims in the instant suit are being dismissed, pursuant to 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over Count III. Consequently, Count III will be dismissed without prejudice to the right of Plaintiff to reassert this claim in the appropriate state court.[7]

**D.     Leave to Amend**

The Third Circuit has instructed that if a civil rights complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 237 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)). Here, because Plaintiff may be able to allege facts sufficient to state a First Amendment claim, I will grant leave to amend the Amended Complaint.

Plaintiff is also ordered to clarify the basis for Count I, entitled "Politically Motivated Harm," which appears to be no different from Count II, alleging retaliation. Both counts rely on the same allegations and seek relief under the same statute and precedent for the same

---

[7]Thus, I express no opinion as to Defendants' absolute immunity from liability for the passing of the allegedly invalid ordinance. (*See* Doc. 13, at 6).

alleged infringement and injuries. Thus, it appears that Count I is a mere surplusage.[8]

## IV. Conclusion

For the above-stated reasons, Defendants' motion to dismiss (Doc. 11) will be granted. Plaintiff's First Amendment claims (Counts I & II) will be dismissed without prejudice. I decline to exercise jurisdiction over Count III, premised on state law, which will be dismissed without prejudice.

An appropriate order follows.

June 19, 2017  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge

---

[8]I also encourage both parties to refrain from pointing out what the other side failed to do; it is more than obvious to me when a legal proposition is unsupported by a proper citation, and I treat it accordingly. Both parties should focus on ensuring that their own legal arguments find support in the applicable precedent and properly cite to that precedent. Pointing out the deficiencies of the other side's brief, while not undertaking to fix the very same deficiencies in one's own brief, is unhelpful. (*Compare* Doc. 13, at 11 (¶ F) *with* Doc. 14, at 18 ("Point Five")).