## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY ADAMITIS,

    Plaintiff,

        v.

BOROUGH OF DICKSON CITY, *et al.*,

    Defendants.

NO. 3:16-CV-0497

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before me is the Motion to Dismiss the Second Amended Complaint (Doc. 20) filed by Defendants Borough of Dickson City (the "Borough"), Michael Fedorka ("Fedorka"), Robert Hall ("Hall"), Rose Louryk ("Louryk"), Rick Cesari ("Cesari"), Jack Horvath ("Horvath"), Jeffrey Kovaleksi ("Kovaleski"), and Barbara Mecca ("Mecca") (collectively, where appropriate, "Defendants"). Plaintiff Anthony Adamitis ("Adamitis" or "Plaintiff") alleges that Defendants violated his First Amendment rights after he supported, campaigned, and associated with his wife and another candidate in their bids for Borough Council in 2015. I previously granted Defendants' motion to dismiss Plaintiff's amended complaint, finding, *inter alia*, that Plaintiff failed to allege that Defendants' action were sufficient to deter a person of ordinary firmness from exercising his rights. Plaintiff, however, was granted leave to file an amended pleading, which he did. Because Plaintiff's Second Amended Complaint again fails to state a state a violation of his First Amendment rights, I will grant Defendants' motion, dismiss Plaintiff's federal law causes of action, and decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. Plaintiff will, however, be given one final opportunity to amend his complaint to sufficiently state his First Amendment claims.

## I. Background

Plaintiff commenced this action against Defendants on March 23, 2016. (*See* Doc. 1, *generally*). After Defendants filed a motion to dismiss the complaint, (*see* Doc. 8, *generally*), Plaintiff filed an amended complaint on May 17, 2016, asserting claims for "Politically Motivated Harm" (Count I), "First Amendment violation" (Count II), and declaratory judgment regarding the validity of Borough Ordinance 2-2016. (*See* Doc. 10, *generally*).

On May 31, 2016, Defendants filed a motion to dismiss Plaintiff's amended complaint. (*See* Doc. 11, *generally*). In resolving Defendants' motion, I set forth the facts as alleged by Plaintiff in the amended complaint as follows:

> Plaintiff Anthony Adamitis is an elected Tax Collector for the Borough of Dickson City. Plaintiff was an active supporter of his wife, Georgia Adamitis, and Paul Kwiec in their campaign for Borough Council.
>
> Defendants are five current and two former members of the Council who were politically against Georgia Adamitis and Paul Kwiec, instead supporting Defendants Michael Fedorka, John Horvath, Jeffrey Kovaleski, and Rose Louryk. Defendants were aware of Plaintiff's support for and association with Georgia Adamitis and Paul Kwiec in their campaign for Borough Council.
>
> On May 19, 2015, Georgia Adamitis and Paul Kwiec won the primary election. The following day, Defendants took away Plaintiff's access card to the Borough's administrative offices; Plaintiff, however, continues to have access to the building, where he retrieves his mail and faxes, if another employee is present in the administrative offices. Plaintiff was also told to move all tax records out of a storage area where they had been kept for more than twenty years.
>
> Sometime in May 2015, Defendants Fedorka, Horvath, Kovaleski, and Louryk publicly disparaged Plaintiff. They disclosed personal, private, and incorrect information about Plaintiff to the public.
>
> Nearly five months later, on October 19, 2015, Defendant Fedorka, pursuant to Pennsylvania Right-to-Know disclosure laws, requested from Plaintiff "all receipts, cancelled checks or other forms of payment made to the Dickson City Tax Collector or his office for fees charged for duplicates or replacement bills from the year 2011 to October 17, 2015." (*Id.* at ¶ 29). According to Plaintiff, this

request was unfounded because Plaintiff, as an elected Tax Collector, is not subject to the Right-to-Know disclosure laws.

A month later, in November 2015, both Georgia Adamitis and Paul Kwiec won the general election. In mid-December, Plaintiff's computer was allegedly "tampered with on at least two occasions and his paperwork was reviewed even though his office was locked." (*Id.* at ¶ 31). That same month, Defendant Hall, pursuant to Right-to-Know laws, sought "a copy of any and all documents, correspondence sent or received concerning payment, fees or other instruction on requesting a tax duplicate for the year 2015, 2014, 2013, and 2012." (*Id.* at ¶ 32).

Shortly thereafter, on or about December 28, 2015, the Council passed a motion to seek "submissions to the Pennsylvania Right To Know Office to AP 2015-2806 and to take appropriate action to secure the requested material." (*Id.* at ¶ 33). Two days later, Defendant Hall, pursuant to Right-to-Know laws, again requested from Plaintiff a "copy of the Dickson City Tax Collector yearly report of total gross compensation for the years 2011, 2012, 2013, and 2014." (*Id.* at ¶ 35).

Three months later, on March 8, 2016, the Council passed an ordinance requiring the elected Tax Collector "to assess and collect $11 for each tax certificate/assessed property and forward the same to the Borough to be deposited in the general fund." (*Id.* at ¶ 38). The Borough "will then issue a check to the Tax Collector subject to withholdings." (*Id.*). According to Plaintiff, the ordinance requires him "to perform his elected position in a more expensive way to taxpayers and others seeking information on tax certification duplicates." (*Id.* at ¶ 37).

Finally, Plaintiff claims that the Borough ordinance passed on March 8, 2016 is invalid because, according to the Pennsylvania Tax Collector's Manual, any change in compensation of the Tax Collector must be adopted prior to the 15th day of February. (*Id*. at ¶ 40).

In light of the above, Plaintiff instituted the instant lawsuit (Docs. 1, 10), asserting that Defendants' actions constituted a "campaign of harassment" in retaliation for Plaintiff's political support for Georgia Adamitis and Paul Kwiec. (*Id.* at ¶ 41).

*Adamitis v. Borough of Dickson City*, No. 16-497, 2017 WL 2633509, at *1-2 (M.D. Pa. June 16, 2017) (footnote omitted).

In view of these factual averments, I found that Defendants were entitled to qualified immunity on Plaintiff's First Amendment claims in Counts I and II of the

3

amended complaint because Plaintiff failed to allege acts giving rise to a cognizable retaliation claim under 42 U.S.C. § 1983. *See id*. at *3-6. More particularly, I did not "find that Defendant's [sic] acts amounted to a severe and sustained campaign that constituted an effective deterrent to the exercise of Plaintiff's rights. Even when looking at the record in the light most favorable to Plaintiff, the cumulative effect of the alleged acts by Defendants would not dissuade a person of ordinary firmness from engaging in First Amendment activities." *Id*. at *6. But, Plaintiff was granted leave to file a further amended complaint. *See id*. at *7. In granting Plaintiff leave to amend, he was also directed "to clarify the basis for Count I, entitled 'Politically Motivated Harm,' which appears to be no different from Count II, alleging retaliation," because "[b]oth counts rely on the same allegations and seek relief under the same statute and precedent for the same alleged infringement and injuries. Thus, it appears that Count I is a mere surplusage." *See id*.

Plaintiff filed his Second Amended Complaint on July 7, 2017. (*See* Doc. 18, *generally*). The Second Amended Complaint contains similar factual allegations as set forth in the amended complaint (as quoted above). (*Cf.* Doc. 18, *generally*, *with* Doc. 10, *generally*). In addition, Plaintiff alleges in the Second Amended Complaint, *inter alia*:

> n.1    [I]t was the entire Council that removed access and storage. Specifically, the email sent states, "I was directed by *Borough Council* to remove the Tax Collector from access to the Administration Office immediately."
>
> . . .
>
> 22.    Specifically, Defendants Michael Fedorka, John Horvath, Jeffrey Kovaleski, and Rose Louryk put a flyer together listing Plaintiff's prescription payment implying that Plaintiff was somehow ripping off the government. Moreover, healthcare information is confidential information that should not be disclosed to the public. The actual date of publication is not on the document, but it was distributed after May 8, 2105, but before election day.
>
> n.3    Plaintiff is not an employee of Defendant Dickson

4

City, but disclosing false, confidential healthcare information is not mere criticism, false accusation or a verbal reprimand. The harm is far greater since the public believes the false information that should have remained private.

. . .

26. This action of removing access to administrative office, which Plaintiff had access for over 10 years, was not done through a Borough Council vote or public meeting. Therefore, Defendants are not protected by legislative immunity.

27. Plaintiff needs access to the administrative office since the fax machine and the mail is delivered and sent from within. He is required to provide duplicate tax certifications, which the requests come by mail and fax. Consequently, to remove access to the same interferes with Plaintiff's ability to perform the Tax Collector duties. . . . and this action would deter a person from exercising [sic]

28. . . . Again, this was not decided by a majority vote at a Borough Council, and therefore, legislative immunity does not apply.

(Doc. 18, ¶¶ 22, 26-28 & n.1, 3).[1] Like Plaintiff's amended complaint, the Second Amended Complaint again asserts claims for "Politically Motivated Harm" (Count I), "First Amendment violation" (Count II), and declaratory judgment regarding the validity of Borough Ordinance 2-2016. (*See id*., *generally*).[2]

---

[1]    To the extent that the Second Amended Complaint omits facts that were contained in Plaintiff's prior pleading, the omitted allegations are not considered here. *See West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171-73 (3d Cir. 2013).

[2]    Plaintiff, as indicated, was directed to clarify the bases for Counts I and II. *See Adamitis*, 2017 WL 2633509, at \*7. Plaintiff asserts that Count I sets forth a political affiliation claim, while Count II states a First Amendment retaliation cause of action. (*See* Doc. 18, n.2 (citing *Galli* v. N.J. Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007)). Given the elements of a political patronage claim, *see Galli*, 490 F.3d at 271, and the allegations in the Second Amended Complaint, (*see* Doc. 18, *generally*), I construe Count I as a First Amendment retaliation claim based on association and Count II as a First Amendment retaliation claim based on speech. *See, e.g.*, *Killion v. Coffey*, 696 F. App'x 76,

On July 14, 2017, Defendants filed a motion to dismiss the Second Amended Complaint along with a supporting brief. (*See* Docs. 20-21, *generally*). Plaintiff's opposition brief was submitted on July 24, 2017, (*see* Doc. 22, *generally*), and Defendants filed a reply brief in further support of their motion on July 26, 2017. (*See* Doc. 23, *generally*). The motion to dismiss is thus fully briefed and ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

---

77-79 (3d Cir. 2017). If this understanding of Count I is incorrect and Plaintiff elects to file a further amended complaint, he should clarify the nature of the claim set forth therein.

*Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

## III. Discussion

### A. Qualified Immunity.

In Counts I and II of the Second Amended Complaint, Plaintiff, as stated, asserts First Amendment claims against the Borough and individual Defendants. Individual Defendants claim that they are entitled to qualified immunity on Plaintiff's First Amendment claims.

Qualified immunity insulates government officials performing discretionary functions from suit insofar as "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). When a qualified immunity defense is asserted, a court must determine (1) whether the facts alleged by the plaintiff make out a violation of a constitutional right, and (2) whether that right was clearly established at the time of the injury. *Yarris v. Cty. of Del.*, 465 F.3d 129, 140-41 (3d Cir. 2006) (citation omitted). Courts may exercise their discretion in deciding which inquiry to address first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Here, individual Defendants argue that Plaintiff fails to allege a violation of his constitutional rights. (*See* Doc. 21, 7-9, 10-12).

It is well-established that "an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights." *Anderson v. Davila*, 125 F.3d 148, 160 (3d Cir. 1997) (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)). To properly plead a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege "(1) that [the plaintiff] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory

7

action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *see also Rossiter v. City of Phila.*, 674 F. App'x 192, 196 (3d Cir. 2016); *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

In granting Defendants' motion to dismiss Plaintiff's amended complaint, I found dispositive that Plaintiff failed to allege actions that were sufficient to deter a person of ordinary firmness from exercising his or her rights. *See Adamitis*, 2017 WL 2633509, at *4 (citing *Lauren W.*, 480 F.3d at 267). Specifically, I found the allegations regarding the removal of Plaintiff's key card access to the building, the order that he remove his tax records from Borough storage, the Right-to-Know requests, the disclosure of "personal, private, incorrect information on Plaintiff to the public," and the passing of an ordinance which modified the compensation scheme for a Tax Collector, "even if true, do not rise to the level of actionable conduct." *Id*. at *4. I found the allegations regarding the removal of key card access and the prohibition on the use of the storage area to be "merely *de minimis* inconveniences" because Plaintiff was still able to access the building. *Id*. I further explained that the allegation of the disclosure of Plaintiff's personal information by Defendants was insufficient because he failed to aver what information was disclosed and "to specify the date, circumstances, and context of the alleged disclosure." *Id*. at *5. Additionally, I noted that the alleged retaliatory acts against Plaintiff "'would not dissuade a person of ordinary firmness from'" engaging in the type of protected conduct activity undertaken by Plaintiff. *Id*. (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)). Accordingly, I held that "the acts, as alleged, are *de minimis* and do not give rise to a cognizable retaliation claim under § 1983. As such, the individually named Defendants are entitled to qualified immunity." *Id*.

Plaintiff's Second Amended Complaint fails to cure these deficiencies. For one, regarding the alleged disclosure of private information, Plaintiff now identifies that this information was contained in a flyer that was prepared by Fedorka, Horvath, Kovaleski, and Louryk and disclosed after May 8, 2015 but before May 19, 2015.

(*See* Doc. 18, ¶¶ 22, 24). Plaintiff argues that healthcare information is confidential that should not be disclosed to the public and its disclosure causes far greater harm than the publication of criticism or verbal reprimands. (*See id*. at ¶ 23 n.3). Plaintiff, though, avers not that his healthcare information was disclosed, but rather vaguely pleads that his "prescription payment" was listed on the flyer, (*id*. at ¶ 22), without any additional factual allegations suggesting that such speech was, in fact, "private information about an individual." *See Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 482 (M.D. Pa. 2015). Based on the allegations as pled in the Second Amended Complaint, Plaintiff avers only that the cost of benefits or compensation he receives from the Borough as an elected official was made public, (*see* Doc. 18, ¶ 22),[3] and Plaintiff does not cite any authority that such information is, in fact, confidential. *Cf. Dep't of Conservation & Nat. Res. v. Office of Open Records*, 1 A.3d 929, 938 (Pa. Commw. Ct. 2010) (salary, actual compensation, or other expenses or payments to a public official or agency is not exempt from disclosure under Pennsylvania's Right-to-Know Law, 65 P.S. § 67.708(b)(6)(ii)); *Stone v. Gilberton Borough*, No. AP 2013-1402, 2013 WL 5091512, at *2 (Pa. Office of Open Records Sept. 9, 2013) ("records revealing an agency's payments for an employee's medical benefits is 'compensation to an agency employee' within the meaning of' Section 708(b)(6)(ii) and subject to public access.").

Second, Plaintiff's allegations regarding the Right-to-Know "requests are similarly *de minimis* because, assuming that a Tax Collector is not subject to Right-to-Know disclosure laws, as Plaintiff suggests, he could have simply refused them. . . . More importantly, I cannot find that a mere request for information by the Council members rises to the level of retaliation." *Adamitis*, 2017 WL 2633509, at *4.

Third, taking away Plaintiff's access card and the request to remove records

---

[3]     Plaintiff does not allege that the flyer contained any factual information regarding his health, such as any medical conditions or medications Plaintiff was prescribed.

from a storage area are merely *de minimis* inconveniences. *See id.* Although Plaintiff in the Second Amended Complaint alleges that he needs access to the administrative office to provide tax certifications which come by mail and fax, (*see* Doc. 18, ¶ 27), his "access to the building was never taken away; he is still free to access it without the convenience of a key card." *Adamitis*, 2017 WL 2633509, at \*4; (*see also* Doc. 18, ¶ 27 ("If no one is present in the administrative offices he cannot retrieve his mail or fax as he has in the past 10 years.")).

Fourth, the claim relating to the tampering with Plaintiff's work computer "does not rise above a mere speculation as to the named Defendants" since Plaintiff does not allege "if any of the named Defendants were responsible for the alleged tampering." *Adamitis*, 2017 WL 2633509, at \*4 n.3.

Lastly, Plaintiff's allegation of retaliation for the adoption of a new Borough ordinance altering the administration of the Tax Collector's salary fails to support his First Amendment claims "because his compensation was the same before and after the ordinance, the alleged wrong is, again, trivial. Plaintiff claims only that, instead of receiving the collected fees directly, he now receives them from the Borough, which I cannot even characterize as an inconvenience." *Adamitis*, 2017 WL 2633509, at \*5 (citing *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (finding that briefly taking an employee off the payroll and a suspension were more than *de minimis* to support a cause of action for illegal retaliation)).

The allegations in the Second Amended Complaint are virtually identical to those that I previously found insufficient to state an actionable claim for retaliation under the First Amendment. (*Cf.* Doc. 18, *generally*, *with* Doc. 10, *generally*). At most, the Second Amended Complaint identifies the date of the alleged disclosure of information about the costs of Plaintiff's benefits on a flyer prepared by Defendants Fedorka, Horvath, Kovaleski, and Louryk. (*See* Doc. 18, ¶¶ 22, 24). However accepting these allegations as true and construing the Second Amended Complaint in the light most favorable to Plaintiff, *see Witasick v. Minn. Mut. Life Ins. Co.*, 803 F.3d

184, 192 (3d Cir. 2012), Plaintiff's nebulous allegation that the flyer disclosed his "prescription payment" does not, by itself, support Plaintiff's "conclusions that the information was indeed 'personal' or 'private' or 'incorrect'" or "confidential." *Adamitis*, 2017 WL 1522509, at \*5. Accordingly, as stated in my prior ruling,

> [T]he cumulative effect of the alleged acts by Defendants would not dissuade a person of ordinary firmness from engaging in First Amendment activities. For instance, the arguably legitimate Right-to-Know requests occurred more than five months after Plaintiff was allegedly ordered to remove files from a storage area and his key card was taken away, and the passage of the allegedly invalid ordinance occurred the following year, three months later. That hardly amounts to a "campaign of harassment," as Plaintiff argues. Thus, I find that the acts, as alleged, are *de minimis* and do not give rise to a cognizable retaliation claim under § 1983. As such, the individually named Defendants are entitled to qualified immunity.

*Id*. at \*6 (citation omitted).

## B. Municipal Liability.

Defendants also seek dismissal of Plaintiff's First Amendment claims against the Borough. (*See* Doc. 21, 9-10).

"[A] municipality cannot be held liable solely because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Rather, a municipality can only be liable under § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). "Thus, although the municipality may not be held liable for a constitutional tort under § 1983 on the theory of vicarious liability, it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom." *Id*. (citing *Monell*, 436 U.S. at 694, 98 S. Ct. 2018). Significantly, though, a *Monell* claim is dependent upon the existence of an underlying substantive constitutional violation. *See, e.g.*, *Noviho v. Lancaster Cnty. of Pa.*, 683 F. App'x 160, 166 (3d Cir. 2017); *Grazier ex rel. White v. City of Phila.*,

328 F.3d 120, 124 (3d Cir. 2003); *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003).

Plaintiff fails to state a *Monell* claim against the Borough. As set forth above, Plaintiff has not pled the existence of a violation of his constitutional rights. Because Plaintiff has failed to do so, the municipal liability claim against the Borough will be dismissed. *See Bensinger v. Twp. of Hegins*, No. 15-1450, 2016 WL 1242353, at \*6 (M.D. Pa. Mar. 30, 2016).

**C.      State Law Claim.**

In Count III of the Second Amended Complaint, Plaintiff seeks to challenge a local compensation ordinance on state tax law grounds. (*See* Doc. 18, ¶ 55-58). Because all federal claims in the instant suit are being dismissed, I will decline to exercise supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(c)(3). Consequently, Count III will be dismissed without prejudice to the right of Plaintiff to reassert this claim in the appropriate state court.

**D.      Leave to Amend.**

While Plaintiff has not requested leave to file a further amended complaint, Third Circuit "precedent supports the notion that in civil rights cases district courts must offer amendment - irrespective of whether it is requested - when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Amendment is futile "if the amended complaint would not survive a motion to dismiss." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014).

In the matter *sub judice*, Plaintiff has already amended his complaint twice - once as a matter of course and once with leave of court. (*See* Docs. 1, 10, 18, *generally*). Although a plaintiff's "repeated failure to cure deficiencies by amendments previously allowed" supports a finding of futility, *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (internal quotation marks omitted), Plaintiff has only

been granted leave to amend once. As such, because Plaintiff may be able to set forth facts sufficient to state his First Amendment claims, he will be given one final opportunity to further amend his pleading.

## IV. Conclusion

For the above stated reasons, Defendants' motion to dismiss will be granted. Plaintiff's First Amendment claims will be dismissed, but he will be granted twenty-one (21) days to file a further amended complaint to sufficiently allege those claims. Failure to file a further amended complaint within that time will result in the dismissal of those claims with prejudice. I will decline to exercise supplemental jurisdiction over Plaintiff's state law claim, which will be dismissed without prejudice.

An appropriate order follows.


November 14, 2017                                    /s/ A. Richard Caputo
Date                                                 A. Richard Caputo
                                                     United States District Judge